UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT RODRIGUEZ,                         CIVIL CASE NO. 04-40154

           Plaintiff,

v.                                        HONORABLE PAUL V. GADOLA
                                          U.S. DISTRICT JUDGE

FORD MOTOR COMPANY,

           Defendant.
_____/


**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Robert Rodriguez ("Plaintiff") brings this action
against his former employer, Ford Motor Company ("Defendant Ford"),
claiming retaliatory discharge in violation of the Family and
Medical Leave Act.  29 U.S.C. §§ 2601-54 ("FMLA").  Before the
court is Defendant's motion for summary judgment.  Because
Plaintiff has demonstrated that sufficient evidence exists on which
a reasonable jury could find for the Plaintiff, the Court will deny
Defendant's motion.

I.    **BACKGROUND**

Defendant Ford Motor Company employed Plaintiff in the spring
of 1999 as a production worker.  Plaintiff became a full time,
hourly employee of Ford Motor Company on April 10, 2000 and
continued this employment until his termination on March 26, 2001.
On February 26, 2001, Plaintiff sustained an occupational injury at

the Dearborn Engine Assembly Plant when he was struck by a hi-lo. The impact knocked him over, and the hi-lo ran over his left foot. Plaintiff was immediately taken to Oakwood Hospital for treatment. Orthopedic surgeon, Dr. Douglas Phlagens (Plaintiff's "treating physician"), treated Plaintiff at the hospital and diagnosed the injury as a crushed left foot and a second metatarsal fracture.

Defendant Ford contacted Oakwood Hospital on the day of the injury for an update on Plaintiff's condition. The hospital would not give out any information due to confidentiality concerns. Plaintiff remained at the hospital until he was discharged on February 28, 2001.

On March 1, 2001, Oakwood Hospital informed Defendant Ford, that Plaintiff was discharged the previous day. During this conversation, Defendant confirmed Plaintiff's diagnosis and learned that Plaintiff had a bulky wrap around his left foot. A Ford nurse called Plaintiff at home, but no one answered. Another unanswered call was placed to the Plaintiff's home by Ford nurse Veronica Kamm. These calls were to inform the Plaintiff that he needed to report to the Ford medical department for evaluation by a company doctor. This is standard procedure for occupational injuries at Defendant Ford.

The next day, Friday, March 2, 2001, nurse Kamm made contact with Plaintiff at his home and instructed him to report to the Ford

2

medical department for examination by a company doctor. Plaintiff informed Kamm that he had undergone a CT scan on his left foot and was on Vicodin for pain.

Plaintiff reported to the Ford medical department the following Monday, March 5, 2001. Plaintiff did not bring his discharge papers from Oakwood Hospital because, as Plaintiff explained, they did not state anything about him being off work. The papers normally contain follow-up care, a plan of treatment, and a diagnosis. Plaintiff simply told Ford physician, Dr. Harry Gee, that he broke his left foot.

At this examination, Ford medical notes in its summary report that Plaintiff's left foot was "discolored and extremely swollen," and Plaintiff had a fluid blister above his third metatarsal and over the entire ball of his left foot. Pl. Resp., Ex. 3 at 3. Also contained in the Ford medical summary report is Plaintiff's statement that he had no feeling in his left foot. Id. Plaintiff informed Ford's physician that he had an appointment scheduled with his treating physician on Wednesday, March 7, 2001. Ford's physician advised Plaintiff to keep that appointment.

Then, Ford's physician released Plaintiff for seated, non-production work with permission to elevate his foot as needed. Defendant Ford prohibits Vicodin use at work so Ford's physician offered an alternative pain medication, but Plaintiff refused the

3

alternative.  Plaintiff was then transported to the Labor Relations office for reassignment.

Plaintiff's seated, non-production work involved sitting in the labor relations office with his foot elevated.  Apparently, he was not given any work to do.  Later, Plaintiff's foot started to "get darker purple and swell."  Pl. Resp., Ex. 1 at 30.  He asked if he could leave and was told that he could not.  At some point after this request, he requested a personal day and was denied. Plaintiff left the labor relations office and went home.

The next day, Tuesday, March 6, 2001, Defendant Ford sent a facsimile to Plaintiff's treating physician, authorizing him to treat Plaintiff's foot injury and instructing the treating physician to send all correspondence to the attention of Adam Heugh in Ford's worker's compensation department.

On Wednesday, March 8, 2001, Plaintiff informed Ford nurse Kamm that his treating physician drained the blister on the bottom of his foot at his appointment on March 7, 2001.  The nurse instructed Plaintiff to report to the Ford medical department for a follow-up appointment and that a taxi would be sent for him. Plaintiff stated he would inform medical when he was ready to come in that day.  The nurse also warned him that he should be working because he was issued restrictions.  The nurse also stated that if he needed completely off work, he should present medical

4

justification.    Plaintiff  did  not  report  for  a  follow-up examination at Ford medical, nor did he provide Defendant Ford with medical documentation.

On  March  8,  2001,  Defendant  Ford's  worker's  compensation department  received  a  facsimile  from  Plaintiff's  treating physician.  The form stated Plaintiff's condition and that he was medically unable to work until further notice.  According to Mr. Heugh,  he  normally  hand  delivers  such  notices  to  the  medical department  as  standard  procedure.   In  this  instance,  however,  no one in medical saw the facsimile.

Ford's  standard  procedure  requires  an  employee's  treating physician to complete a "form 5166" to request a leave of absence for a health condition or to provide medical certification.  After the  employee  returns  the  completed  form  to  the  Ford  medical department,  a  Ford  physician  determines  whether  the  condition  is serious enough to qualify for FMLA leave.

On  March  15,  2001,  after  consultation  with  the  medical department,  a  Ford  labor  relations  representative  sent  Plaintiff  a "five  day  quit  notice"  via  registered  mail  in  accordance  with Ford's attendance policy.  This notice provides that if an employee is absent from work for five consecutive days, then the employee has five days to either: (1) report to the employment office for work,  or  (2)  give  satisfactory  reason  for  the  absence  to  the

employment office in writing or by telephone.  If these conditions are not met, Ford terminates the employee.  Additionally, the notice provides that if the absence is due to illness or injury, the employee should report to the employment office within five days.  The employee will be granted sick leave to cover the absence upon satisfactory evidence of the illness or injury.  After Defendant Ford sent Plaintiff the notice, Plaintiff's treating physician spoke with Ford's physician on the telephone and explained that Plaintiff was unable to work.

Plaintiff did not personally respond to the notice.  The envelope was returned to Defendant Ford unclaimed, although Ford sent it to the proper address.  On March 22, 2001, a Ford labor relations representative sent an email to Defendant Ford nurse Kamm requesting an update on Plaintiff's status.  Nurse Kamm replied that Plaintiff had not opened medical leave nor updated any information.  Ford subsequently terminated Plaintiff on March 26, 2001.  Plaintiff now brings this suit against Ford claiming that Ford terminated him in violation of the FMLA.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

6

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Martin v. Ohio Turnpike Comm'n, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. Id. at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. Id. at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

7

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. Id.; Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted); see Celotex, 477 U.S. at 322-23; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. Lucas v. Leaseway Multi Transp. Serv.,

8

<u>Inc.</u>, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), <u>aff'd</u>, 929 F.2d 701 (6th Cir. 1991).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252; <u>see</u> <u>Cox v. Ky. Dep't of Transp.</u>, 53 F.3d 146, 150 (6th Cir. 1995).

## III. ANALYSIS

Plaintiff claims that he was discharged in violation of the FMLA because Defendant Ford unlawfully terminated him during FMLA protected leave.  To establish a prima facie case of retaliatory discharge under the FMLA, Plaintiff must show (1) that "he availed himself of a protected right under the FMLA," (2) that he suffered an adverse employment decision, and (3) that the adverse employment decision was causally related to Plaintiff's exercise of the FMLA protected activity.  <u>See Skrjanc v. Great Lakes Power Serv. Co.</u> 272 F.3d 309, 314 (6th Cir. 2001).  Regarding the second requirement, the parties agree Plaintiff suffered an adverse employment decision by his termination on March 26, 2001.  The Court will address the other two elements: whether Plaintiff availed himself of a protected right under the FMLA and whether the adverse employment decision was causally related to Plaintiff's allegedly FMLA protected activity.

**A.   Plaintiff's availment of a protected right under the FMLA**

To determine if Plaintiff availed himself of his FMLA protected rights, the Court examines whether Plaintiff notified Defendant of his need for FMLA protected leave.  "To invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting leave."  Cavin v. Honda of Am. Mfg., 346 F.3d 713, 723-24 (6th Cir. 2003) (quoting Brohm v. JH Props., Inc., 149 F.3d 517, 523 (6th Cir. 1998) (citation omitted)).

Defendant argues that Plaintiff never requested FMLA covered leave or any leave at all.  An employee, however, "'does not have to expressly assert his right to take leave as a right under the FMLA.'"  Cavin, 346 F.3d at 723 (quoting Hammon v. DHL Airways, Inc., 165 F.3d 441, 450 (6th Cir. 1999)); see 29 C.F.R. §§ 825.302(c), 825.303(b).  The Sixth Circuit has further explained that a plaintiff's "failure to use the word 'leave' or the phrase 'leave of absence' is of no consequence in assessing whether [Defendant] received sufficient notice pursuant to the requirements of the FMLA."  Cavin, 346 F.3d at 725.

Because Plaintiff did not expressly request leave, "the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."  Cavin,

10

346 F.3d at 723 (quoting Brohm, 149 F.3d at 523). The Sixth Circuit further explained that "[a]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § 2612(a)(1) has occurred." Cavin, 346 F.3d at 725 (quoting Hammon, 165 F.3d at 451). The Court will analyze the facts and circumstances regarding the timing and content of Plaintiff's notice. Cavin, 346 F.3d at 725 (citing Manuel v. Westlake Polymers, Corp., 66 F.3d 758, 762 (5th Cir. 1995).

Substantial evidence is available from which a jury could infer that Defendant had notice of Plaintiff's serious medical condition. The FMLA clarifies that eligible employees are entitled to leave if an employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The regulations further explain that a serious medical condition includes inpatient care in a hospital and subsequent treatment relating to the inpatient care. 29 C.F.R. § 825.114(a)(1).

The Sixth Circuit determined that an employee sufficiently put an employer on notice when he told security that he "was injured in a motorcycle accident" and that he "just got out of the hospital." Cavin, 346 F.3d at 735. In this case, Defendant Ford similarly

11

knew that Plaintiff suffered an occupational injury at the plant, was taken to the hospital, remained there for almost three days, suffered from a broken foot, had a large bandage on his foot, and needed crutches. Arguably, Defendant Ford's physician acknowledged Plaintiff was "unable to perform the functions of [his] position" by restricting Plaintiff to seated, non-production work. 29 U.S.C. § 2612(a)(1)(D).

Furthermore, after Plaintiff was reassigned to seated, non-production work, and after his foot, allegedly, began to swell and cause pain, Plaintiff requested to leave the labor relations office. His request was denied. He attempted to take a personal day, but he was denied. Plaintiff then left the workplace without permission. Plaintiff's requests and departure, combined with Defendant's knowledge, may be sufficient notice to Defendant Ford. Moreover, the FMLA expressly allows third-person notification of an employee's inability to work. 29 C.F.R. § 825.303(b). On March 8, 2001, Plaintiff's treating physician faxed Defendant Ford an off work slip, which may constitute third person notification.

Defendant argues that Plaintiff failed to give notice within two days as contemplated by the regulations. 29 C.F.R. § 825.303(a). The regulations, however, also state that the "employer may waive employees' FMLA notice obligations or the

employers own internal rules on leave notice requirements." 29
C.F.R. § 825.304(a). Defendant Ford knew Plaintiff had an
appointment with his treating physician on Wednesday, March 7,
2001, two days after Plaintiff abruptly left work. On Thursday,
March 8, 2001, Plaintiff's treating physician notified Defendant
Ford of Plaintiff's inability to work until further notice. That
same day, Ford nurse Kamm requested of Plaintiff to report to the
Ford medical department and submit medical certification if
Plaintiff needed to be off work. A reasonable jury could conclude
that Defendant Ford waived the two day notice requirement by
continuing to request medical certification.

Furthermore, Mr. Heugh, from Ford's Worker's Compensation
Department, stated in his deposition that he normally hand delivers
notices, such as the facsimile from Plaintiff's treating physician,
to the medical department as standard procedure. Pl. Resp., Ex.
9 at 56-57. From the fact that Defendant Ford had this standard
procedure, a reasonable jury could infer that Defendant Ford was on
notice of Plaintiff's need for leave.

Defendant Ford also contends that Plaintiff did not avail
himself of his FMLA protected rights because Plaintiff failed to
submit a "form 5166" to support his need for leave. To ensure a
medical leave is FMLA qualifying, the employer may require leave

13

requests to "be supported by certification issued by a health care provider of the eligible employee." 29 C.F.R. § 825.305(a). The "employer must give notice of the requirement for medical certification each time a certification is required." Id. Defendant Ford apparently did request medical certification from Plaintiff by telephone. This attempt, by itself, fails to comply with the regulations. 29 C.F.R. §§ 825.301, 825.305(a). The regulations require an employer's certification request to be in writing and it

> must be provided to the employee no less often than the
> first time in each six month period that an employee
> gives notice of the need for FMLA leave. . . . The notice
> [of the certification requirement] shall be given within
> a reasonable time after notice of the need for leave is
> given by the employee-within one or two business days if
> feasible. If leave has already begun, the notice should
> be mailed to the employee's address of record.

29 C.F.R. § 825.301(c). The employer's request for certification "ensure[s] employees receive the information necessary to enable them to take FMLA leave." 60 Fed. Reg. 2220 (1995). Additionally, the employer must inform the employee of the consequences of failing to submit the certification. 29 C.F.R. § 825.305(d). Plaintiff stated in his deposition that he did not receive written notification of this certification requirement.

Thus, regarding the availment requirement, a reasonable jury

14

could conclude that Plaintiff sought to exercise his FMLA rights by providing Defendant Ford notice of his need for leave on four occasions. Since a jury could find this availment requirement to be satisfied, the Court will proceed to analyze the next requirement.

**B.   Causal connection between termination and protected leave**

The third requirement is that a plaintiff demonstrate a causal connection between his termination and his protected leave. Defendant Ford terminated Plaintiff due to his absences. Defendant Ford contends these absences were not FMLA protected. The Supreme Court, however, has stated that

> the employee will often enjoy every right guaranteed by the FMLA during part or all of an undesignated absence. Under the Secretary's regulations, moreover, employers must comply with the FMLA's minimum requirements during these undesignated periods. <u>See</u>, <u>e.g.</u>, 29 C.F.R. § 825.208(c) (2001) (an employee on paid leave "is subject to the full protections of the Act" during "the absence preceding the notice to the employee of the [FMLA] designation").

<u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 94 (2002).

Plaintiff's absences were not designated as FMLA qualifying before his termination. As discussed above, however, Defendant Ford was potentially on notice of Plaintiff's need for FMLA protected leave. After Defendant Ford mailed the five day quit notice, Plaintiff's treating physician sent Defendant Ford a

15

facsimile stating Plaintiff was unable to work until further notice. On March 22, 2001, Plaintiff's treating physician also orally told a Ford physician that Plaintiff should be off work. That same day an employee from Defendant's Labor Relations office requested information from the medical department regarding Plaintiff's absences. The medical department had no information, even though the facsimile was received a few weeks before and the conversation between the parties' respective physicians occurred earlier that day.

Therefore, Plaintiff may have enjoyed the protection of the FMLA before an actual designation by Defendant Ford that the absences were or were not FMLA qualifying. Thus, a reasonable jury could find that the third and final requirement of a prima facie case has been satisfied. That is, a causal connection might exist between his termination and his availment of his rights under the FMLA.

## C.  Plaintiff's ability to return to work after twelve weeks

Defendant Ford next argues that even if Plaintiff can establish a prima facie case, his claim must be denied because Plaintiff was unable to return to work after the twelve weeks of leave allowed by the FMLA. The Sixth Circuit has ruled that an employer may terminate an employee before the twelve week leave is

16

tolled, if an employee is "clearly unable to return to work within the period provided by the FMLA." Cehrs v. Northeast Ohio Alzheimer's Research Ctr., 155 F.3d 775, 785 (6th Cir. 1998).

Defendant Ford states in its brief that the "FMLA leave would have expired no later than May 23, 2001." Def. Mot. at 17. The absences in question occur after Defendant's departure from work on March 5, 2001. Twelve weeks from this date concludes on Monday, May 28, 2001. Regardless of the exact expiration date for Plaintiff's leave, a question of fact remains regarding Plaintiff's ability to return to work.

Defendant relies on the treating physician's deposition to contend that Plaintiff was physically unable to return to work at the end of the twelve week period. In his deposition, the treating physician was asked if Plaintiff was unable to return to work as of Monday, May 21, 2001. The treating physician responded that a plastic surgeon was "taking care of the soft tissue component" of the injury. Def. Mot., Ex. 4 at 5. "So whatever instructions [Plaintiff] would have had with regards to the [skin] graft would have been through Dr. Naik most likely, but I would have supported that." Def. Mot., Ex. 4 at 5. The record is devoid of any evidence of the plastic surgeon's orders or opinion about Plaintiff's ability or inability to return to work.

17

The treating physician later stated,

Now, work at that point – on the 9th of April Mr.
Rodriguez informed me that he was terminated by Ford
Motor Company.  So at that point whether he was able to
go back to work or not was – I continued say I thought he
probably couldn't go back to work given the injury, but
he had indicated he was terminated at that point.

Def. Mot., Ex. 4 at 5.  This testimony is inconclusive regarding
whether Plaintiff could return to work, particularly when viewed in
the light most favorable to Plaintiff.  The treating physician made
no final determination about Plaintiff's ability to return to work
because Defendant Ford had already terminated Plaintiff.  A
question of fact remains whether Plaintiff could return to his
position at the expiration of the twelve week leave period.

**D.    Statute of Limitations**

Finally, the Court will address the statute of limitations.
Defendant terminated plaintiff on March 26, 2001.  Plaintiff filed
his original complaint on July 1, 2003, and an amended complaint on
May 5, 2004, which dates back to the original complaint.  Fed. R.
Civ. P. 15(c).  Plaintiff's claim was filed beyond the FMLA's two-
year statute of limitations, which expired March 26, 2003.  29
U.S.C. § 2617(c)(1).  If, however, Plaintiff can prove Defendant's
"willful" violation of the FMLA statute, the statute of limitations
extends to three years, or until March 26, 2004.  29 U.S.C. §

18

2617(c)(2).  To support a finding of willful violation, Plaintiff must prove that Defendant knowingly or recklessly disregarded the requirements of the FMLA.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Hoffman v. Prof'l Med Team, 393 F.3d 414, 417 (6th Cir. 2005).

Plaintiff submits sufficient evidence from which a reasonable jury could conclude that Defendant Ford willfully violated the FMLA by recklessly disregarding the FMLA's requirements.  As discussed above, Defendant Ford was potentially put on notice of Plaintiff's need for leave due to a serious medical condition on four separate occasions: (1) Defendant Ford knew Plaintiff was injured at work and required hospitalization, (2) Plaintiff left work after twice requesting leave for his condition, (3) Plaintiff's treating physician faxed Defendant Ford an off work slip, and (4) Plaintiff's treating physician told Ford's physician that Plaintiff was unable to work.  Defendant Ford terminated the Plaintiff after the potential notices of Plaintiff's need for leave.  A reasonable jury could conclude that Ford recklessly disregarded its responsibilities under the FMLA and, therefore, willfully violated the FMLA, invoking the three year statute of limitations.  A question of fact remains as to whether Defendant's violation was willful and therefore whether the three year statute of limitations may apply.  Defendant Ford's motion for summary judgment will be

19

denied on this ground.

To summarize, genuine issues of material fact remain and summary judgment is inappropriate. As discussed above, a jury could find that Plaintiff availed himself of the FMLA, that Plaintiff was terminated, and that his termination was causally connected to his invocation of FMLA rights. Furthermore, a reasonable jury could conclude that Plaintiff was able to return to work at the end of the twelve week period allowed for FMLA leave. Finally, a reasonable jury could conclude that Defendant willfully violated its duties under the FMLA, which would subject this case to the three year statute of limitations. Accordingly, the Court will deny Defendant's motion for summary judgment.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 13] is **DENIED**.

**SO ORDERED.**


Dated: August 12, 2005          s/Paul V. Gadola
                                HONORABLE PAUL V. GADOLA
                                UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on  August 15, 2005 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:     David R. Deromedi; Khalilah V. Spencer                         , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:   Ernest F. Friedman; Stephen M. Kulp                .

s/Ruth A. Brissaud

Ruth A. Brissaud, Case Manager

(810) 341-7845